## HAZZARD vs. NOTTINGHAM.

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

Debt or assumpsit will lie on the judgment of a foreign court.

A judgment rendered in another state, is a foreign judgment, and only *prima facie* evidence of debt.

When a matter has been litigated before a competent tribunal, the decision of such tribunal is conclusive upon the parties in all civilized states.

There is no limitation in the statute, to the time of bringing an action of debt on judgment.

DEBT, on judgment of the court of common pleas of Sussex county, state of Delaware.

Special Demurrer to the Declaration, and joinder.

PLEA of *Nil Debet.*

And Plea—That " the supposed cause of action in the said declaration mentioned, did not accrue to the said Thomas Hazzard, at any time within six years before the suing or bringing the action aforesaid" —to which there was a general demurrer.

WRIGHT, for the plaintiff.

GOODENOW, for the defendant.

PRESIDENT.—It is urged in support of the demurrer to this declaration, that an action of debt will not lie on a judgment obtained in another state or country ; that the proper form of action is assumpsit ; but that if debt will lay at all, it can only be debt on simple contract, in which the whole proceedings must be set forth, with an averment that the original cause of action was within the jurisdiction of the court. On the other side it is contended, that, by the constitution and law of the United States, a judgment rendered in one state, is to have the same effect in every other state, as it may by law have in the state where it is rendered ; and that this form of action is not only the proper form, but that it is the only legal method in which suits may be brought on such judgments.

To support this declaration, it would seem unnecessary to enquire farther than whether debt be the proper form of action, and this the usual mode of declaring on foreign judgments. For if the judgments of the other states are to be considered as foreign : as evidence of simple contracts only, yet it does not follow that this form

of action is not the usual and proper form, or that it is necessary to set forth and aver more than is set forth and averred in this declaration. But as the subject has undergone an elaborate discussion, and the opinion of the court is desired on the question, how far the judgment of another state is to conclude a party sued on it here, I will proceed to give that opinion, although it is not directly necessary in deciding this demurrer.

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

If there is any intricacy and difficulty in this subject, it appears to be rather owing to the contradictory opinions which have been holden in the different states by men of eminent talents and learning, than to any obscurity in the constitution and law. The constitution provides, art. 4th, sec. 1st, that "full faith and credit shall be given in each " state to the public acts, records, and judicial proceedings, of every " other state. And congress may, by general laws, prescribe the " manner in which such acts, records, and proceedings, shall be proved, " and the effect thereof." —The act of congress " to prescribe the mode in which the public acts, records, and judicial proceedings, in each state, shall be authenticated, so as to take effect in every other state," is " that the acts of the legislatures of the several states shall be " authenticated by having the seal of their respective states affixed " thereto ; that the records and judicial proceedings of the courts of " any state, shall be proved or admitted in any other court within the " United States, by the attestation of the clerk, and the seal of the " court annexed, " if there be a seal, together with a certificate of the " judge, chief justice, or presiding magistrate, as the case may be, that " the said attestation is in due form ; and the said records and judicial " proceedings, authenticated as aforesaid, shall have such faith and " credit given to them in every court within the United States, as they " have by law or usage in the courts of the state from whence the said " records are, or shall be, taken."

The first case in which a construction was given to this law, is that of Armstrong vs. Carson's executors, 2d Dallas 302, debt. In the circuit court of Pennsylvania, on a judgment obtained in the supreme court of the state of New Jersey, it was holden that *nil debet* could not be received as a plea to such action, " because it would be bad in the courts of New Jersey," and that " whatever doubts there might be on the words of the constitution, the act of congress effectually removes them, declaring, in direct terms, that the record shall have the same effect in this court, as in the court from which it was taken." In the case of Green vs. Sarmiento, appendix to Brown's Reports 32, in the same court, Judge Washington considers a judgment of the mayor's

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

court in New York, as conclusive evidence of debt in Pennsylvania; and he construes the terms *faith and credit* in the act of congress, *as synonymous with force and effect.* I have not seen any other case in which the question has been agitated in the Pennsylvania courts, except the case of Wright vs. Tower, reported in the appendix to Brown's Reports, 1st page, in which it was ruled that the judgment of another state is to be considered as a foreign judgment, and *prima facie* evidence only of debt

In the state of New York, by an uniform series of decisions, it has been settled, that a judgment of another state is not conclusive, but only *prima facie* evidence of debt to be considered as a foreign judgment, 1st Caines, 460; 8th Johns, 173. A similar decision was made by the supreme court of Massachusetts in the case of Bartlett vs. Knight, 1st Mass. Rep. 401. The same court afterwards, in the case of Noble vs. Gold, 1st Mass. Rep. 410, note, decided that, "by the constitution and law of the United States, the judgments of the courts of record in the several states were placed, in all respects, upon the same footing with their own domestic judgments." The same question has been since raised in that court, and a decision made, which takes a middle course between the former ones, 9th Mass. Rep. 462, by the opinion of two judges against one (the other two absent) it was adjudged that "the judgments rendered in the courts of the other states were not to be considered as foreign judgments;" neither were they to be considered as domestic judgments rendered in our own courts of record, " that they might be declared on as evidence of debts or promises, and on the general issue, the jurisdiction of the courts rendering them is put in issue; but not the merits of the judgments." The judge who dissented, and the two who were absent in this case, composed the court when the case of Bartlett vs. Knight was decided, so that we may consider the law on this subject as yet unsettled in Massachusetts. The case of Mills vs. Duryea, 7th Cranch, 481, is the only case I have any knowledge of, in which this question has been made in the Supreme Court of the United States; that was debt upon a judgment of the supreme court of the state of New York, to which the defendant pleaded *nil debet:* upon general demurrer, the plea was adjudged bad by a majority of the court.

I have not found (not having had much time to examine) that the question has been directly adjudicated upon in the other states. In this state, the supreme court, in the case of Magner vs.

Case, Trumbull County 1805, were of opinion that the record of a judgment by default, obtained in Washington County, Pennsylvania, was conclusive between the parties. *Nil debet* had been pleaded in that case, and issue joined; the court considered it as an improper plea, and intimated that if it had been demurred to, the demurrer would have been sustained. In the year 1809, the supreme court, sitting in the same county, in the case of Tappan vs. Austin, (which was debt on a judgment rendered by the supreme court of Massachusetts) decided that the record was but *prima facie* evidence of debt, and that the defendant was at liberty, on the issue joined, on the plea of *nil debet* to go into the consideration of the judgment, although it appeared by the record that an appearance and defence had been made, and a full investigation of the merits had, in the original suit. I have not known of any other decision in this state.

JEFFERSON.
April, 1817.

Hazzard
*v.*
Nottingham.

In examining the cases in which the judgments of other states have been held to be conclusive upon the parties, the reasons assigned for such construction of the constitution and law are, to my mind, altogether unsatisfactory. In the leading case, that of Armstrong vs. Carson's executors, judge Wilson says that the law of Congress declares " in direct terms that the record shall have the same effect in this court, as in the court from which it was taken." This was his reason for refusing to receive the plea of *nil debet* to an action of debt on such judgment. It is very evident that the judgment of the court in this case, was founded on a mistake of the terms of the law, and that it cannot, therefore, be entitled to any respect whatever. We have not the reasoning of the court, in the case of Noble vs. Gold; but, in the case of Green vs. Sarmiento, judge Washington infers from the title of the act, that it was the intention of congress, in passing the law, to prescribe both the mode of authentication and the effect which judgments should have. I cannot agree with him, that this title declares, in explicit terms, the determination of that body to act upon both subjects; it is an act to prescribe the mode in which public acts, &c. shall be authenticated " *so as to take effect in every other state.*" What effect? There is no intimation in this title of any intention to answer this question, but only to prescribe the mode of verifying, that there might be certainty and uniformity in that particular, and leaving the effect of such acts, &c. when so proven, to be determined by the state courts. This part of the title appears to mean no more than *so as to take effect as evidence in every other state,* intending to leave the extent or effect of such evidence to be

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

decided on common law principles, according to the nature of each case. If such was not the intention, why, it may be asked, did they not use words positively declarative of the intention supposed, as those which gave them power in this respect, " and the effect thereof"—an expression which would have announced their determination in unequivocal language ? Having found, in the title of the act, what appeared to him explicitly declared as the object of it, the judge very naturally seeks to find, in the enacting part, the accomplishment of that object, and here, I think, he has been led into an error almost as gross as that of judge Wilson, for he says that the expression *faith and credit*, as used in the act, is *synonymous* with *force and effect*. A statute law is to be construed by the intent ; but if it is allowable to imagine an intent, and then construe language to the opposite of its usual import, to sustain it, it will add to the already "glorious uncertainty of the law," by rendering the science altogether conjectural and disputable. I say opposite, for faith and credit are as opposite to force and effect, as opinion and action, as the reception of a deposition and the levy of an execution ; and though one may be the consequence of the other, it is a perversion of language to say that it ever is, or can be, that other. But the reasoning we are commenting upon, does not conclude without conceding in effect, its erroneous assumptions ; for when it is objected, that " if the judgment is to have such effect in this state as it has in the State of New-York, it would create a lien on lands lying in this state, and an execution might issue from the mayor's court where the judgment was rendered, into this state." It is replied, that " the judgment, of itself, has no extra-territorial force ; the laws of New-York can give it none, nor does the act of congress. The courts of the other states are enjoined to give such *faith* and *credit* to it, as it is entitled to in the state of New-York."

The opinion of Chief justice Parsons, in the case of Bissell vs. Briggs, 9th Mass. Rep. 462, before referred to, gives a different view of the subject, and concludes that " judgments rendered in any other of the United States, are not, when produced here as the foundation of actions, to be considered as foreign judgments, the merits of which are to be enquired into, as well as the jurisdiction of the courts rendering them. Neither are they to be considered as domestic judgments, rendered in our own courts of record, *because* the jurisdiction of the courts rendering them is a subject of enquiry. But such judgments, so far as the courts rendering them had jurisdiction, are to have, in our courts, full faith and credit.

They may, therefore, be declared on as evidence of debts or promises; and, on the general issue, the jurisdiction of the courts rendering them is put in issue, but not the merits of the judgments." The opinion of so great a master in the science, cannot be dissented from by any lawyer, but with caution and diffidence. Yet I can see no reason why the defence in such action should be confined to the question of jurisdiction, nor why the record is not as conclusive upon that point as upon some others. In the case of Mills vs. Duryee, judge Story, in delivering the opinion of the court, is reported to have said, that, "the act declares that the record, duly authenticated, shall have such faith and credit as it has in the state court from whence it is taken. If in such court it has the faith and credit of evidence of the highest nature, viz. record evidence, it must have the same faith and credit in every other court. Congress have, therefore, declared the effect of the record, by declaring what faith and credit shall be given to it," and upon this construction of the law it was decided that *nil debet* could not be pleaded to an action of debt brought upon such judgments.

The various constructions put upon this law, by the most learned and skilful judges, would lead to the conclusion that its intent is doubtful and its language obscure and ambiguous; and that we need not hope to succeed, where such men have failed in giving to it an exposition so obviously just and correct, as to produce uniformity of opinion; yet we must remember that in this, as in all other cases, *judicandum est legibus non exemptis*. Let us, then, examine the constitution and the law, and see, if possible, what rule they give to guide us amid such conflicting opinions. The section of the constitution under consideration is two fold in its provisions; first, it enacts and establishes a law of evidence: " full faith and credit shall be given, in each state, to the public acts, records, and judicial proceedings, of every other state," which congress have no power either to enlarge or restrain; second, it delegates to congress power to prescribe, by general laws, first, the manner in which those public acts, records and judicial proceedings shall be proved; and second, the effect thereof. As to the first part of this section, or the law it prescribes, no more can be meant by full faith and credit, than that they shall be received as incontrovertible and conclusive evidence of their own existence, and of all the facts expressed in them. As in the case before us, where the record from Delaware states that Jona. Nottingham confessed a judgment to Thomas Hazzard, for a certain sum of money, in the court of common pleas of Sussex county,

JEFFERSON.
April, 1817.

Hazzard
*v,*
Nottingham.

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

these facts we are bound to give credit to, we may not permit them to be controverted, but we are not to refuse to hear evidence of any fact consistent with those stated in the record; absolute verity is attached to *that*; and many things, perfectly consistent with that verity, may be proven, from which the plaintiff's right of recovery, in this action, may be rendered doubtful, or wholly defeated. As to the second part of this section, or the power vested in congress, no difference of opinion has been entertained as to the first branch of it, the power of prescribing the mode of proof; and it seems to have been generally agreed, that the second, *the effect thereof*, was intended to give congress the power of declaring what effect the public acts, records, and judicial proceedings, of any one state should have in every other state; and the dispute has been, whether congress have executed this power or not. To me it appears evident, that no such power has been given by this section. The power contended for, is a power to prescribe, by general laws, what effect a statute law, or legal adjudication, of any one state, should have in every other state; and as to the kind of effect, it supposes congress to be wholly unlimited, so that they may give to a statute law of Virginia or Rhode Island the force and effect of a statute law throughout the Union; may give to a judgment of any of the state courts the effect of a lien on the lands of the judgment debtor in all the states; and may authorise, on such judgments, executions to issue, running into every state. It would be difficult to imagine any inducement which could have operated upon the convention who framed the constitution, or the states which adopted it, to vest such powers in congress; they are unnecessary for any salutary exercise of legislative power; and with any view of preserving the several state governments, the power of giving effect to the statute laws of any one state within the other states, is as wholly inconsistent as it is unnecessary. Neither was it necessary, for the due administration of justice, that congress should have any power to give effect to the judgments of the state courts without the jurisdiction where they might be rendered; but the exercise of such a power would directly tend to disturb the harmony of the states. I conclude, therefore, that nothing but the most express and unequivocal terms, can warrant the conclusion, that congress have such powers vested in them.

The terms made use of " Congress may, by general laws, prescribe the manner in which such acts, records and proceedings, shall be proved, "*and the effect thereof*," are not so unequivocal and determinate in their signification, as that they will not admit of a

different construction from the one usually put on them. In strict propriety of language, the sentence should be construed to mean—congress may, by general laws, prescribe the manner in which such acts, records, and proceedings, shall *be proved, and the effect of such proof;* because the word *thereof*, which means the same thing as the words *of that*, more correctly applies to the last antecedent *proved*, than to acts, records and proceedings. It may be objected, that the section provides for the effect of such acts, records, &c. *as evidence*, by declaring that *full faith and credit* shall be given to them; but the force of this objection will be diminished, when it is considered that the effect which may be given to evidence is something different from full credence; full faith and credit is given to a record, when it is received as full proof of its own existence, and of all the facts stated in it; when it is received as *prim facie* evidence of debt. But it may have an effect beyond this, and be conclusive evidence of the jurisdiction of the court rendering the judgment, both of the subject matter and of the persons, and also conclusive and incontrovertible evidence of debt. The cases on this subject illustrate the distinction between the credit and effect which may be given to evidence; for the only difference of opinion in them (except the case of Mills vs. Duryee which supports this construction of the words *the effect thereof*) is as to the effect which shall be given to such records as evidence, and not as judgments; and the question has been, whether they shall be received as *prima facie* only or as plenary evidence, whether *nil debet* may or may not be pleaded to actions brought on them: for no one has yet contended that congress have prescribed any *effect* which a judgment of one state shall have in another, or that, *as such*, they have given to it any extra-territorial force whatever.

But, whatever construction is put on the constitution, it will be equally clear that congress have not prescribed the effect which records and judicial proceedings shall have in other states, either as judgments or as evidence. The law, after prescribing the mode of authentication, says, "and the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage, in the courts of the state from whence the said records are or shall be taken." The faith and credit required by this act, to be given to records and judicial proceedings, cannot be more than the full faith and credit required to be given to them by the constitution, and excepting that it

*Margin note:* JEFFERSON. April, 1817. Hazzard *v.* Nottingham.

JEFFERSON.   extends the provision of the constitution to the United
April, 1817.   States courts, it can have no operation.

Hazzard          If the view which is here taken of the constitution be
v.
Nottingham.   correct, that it establishes a law of evidence in requiring
that "full faith and credit shall be given," &c. it seems to follow, as a
consequence, that Congress cannot change that law; and if, also, the
constitution gives congress the power of prescribing the manner in
which judicial proceeding shall be authenticated, and the effect they shall
have when so authenticated, and as to the latter they have been silent,
it is not very obvious that modifying the law on the first point, with
which they had no concern, should be an execution of their powers in
the latter; and yet the cases of Mills vs. Duryee, of Green vs. Sar-
miento, and of Armstrong vs. Carson's executors, seem bottomed upon
this sophism.

In all questions arising under the Constitution and laws of the
United States, the decisions of the Supreme Court of the United States
are intended to be of paramount authority, so that uniformity and
certainty in their construction may obtain throughout the Union; yet,
although the United States' courts have uniformly decided that *nil
debet* is a bad plea to debt in one state, on a judgment of another state,
none of the state courts seem to have considered such decisions as at
all settling the law on the subject. In disregarding the *authority* of
those decisions, then, we do not arrogate to ourselves a greater degree
of independence than is exercised by the courts of New York, Massa-
chusetts, and Pennsylvania. If the state governments are in fact, as
well as in name, sovereign and independent, their judicial tribunals,
when applied to, must administer justice, and construe the laws accord-
ing to their view of them; and it is not unreasonable to suppose, that,
in questions which touch upon that sovereignty and independence,
they may be more watchful over the interests and rights of those within
their jurisdiction, than of strangers, and more guarded against princi-
ples which lead to break down and consolidate the state governments,
than the federal courts may be supposed to be. If, in all such
questions, it shall be found, that the United States courts are as careful
against encroaching upon the states, as jealous of their natural ten-
dency to support the national against the state governments: as they
are careful in the maintenance of the express powers of the former,
then, and not till then, it may be hoped, will their decisions upon
constitutional law, furnish rules for those of the state courts.

The case of debt brought in one state, on a judgment <span>JEFFERSON. April, 1817.</span> under the attachment laws of another state, so fully stated by Judge Rush, in the case of Wright and Tower, will illustrate the injurious consequences which may flow from <span>Hazzard v. Nottingham.</span> establishing the doctrine laid down in the case of Mills vs. Duryee; and indeed it would seem, that if that case is law, the judgments of one state will have an *effect* as evidence even more conclusive than they could have in the states where rendered; for a judgment of (for instance) the supreme court of Ohio, might be voidable for error in fact in the court where rendered, and yet, if debt were brought on it, in Ohio, its correctness could not be controverted; and, according to the opinion of the supreme court of the U. S. it must have the same *effect* as evidence in the courts of the other states, while in those courts its errors could not be examined into. A plaintiff would thus have it in his power to enforce the collection of an erroneous and voidable judgment against a defendant living in Georgia or New Hampshire: and the courts of those states might be compelled to be the unwilling instruments of iniquity, when, if the defendant lived in Ohio, he could be relieved by writ of error. Nor is it any satisfactory answer to this objection, to say, that the defendant, who is sued in Georgia on such a judgment, may also come to this state and obtain the same relief, for it would be compelling most men to submit to be ruined to obtain that justice which they have a right to demand of their own government. There can be no necessity for putting such construction on the law as will expose men to such injurious consequences; and where the meaning of a statute is doubtful, it is always proper to give it a construction most consonant to justice and convenience. By considering the judgments of other states as foreign judgments, and admitting them to be *prima facie* evidence of debt, no injury is done to the claimant under such judgment, for if his judgment is just and regular, he has no occasion to fortify it by other evidence; he has surely sufficient vantage ground in litigation, in whose favor is the presumption in law, and who is able to throw the whole *onus probandi* on his adversary. On the other hand, if they are to be considered as domestic judgments, as conclusive in every state in the union as in the courts of the state where rendered, the consequences may, and most probably, in many instances, will, be ruinous to many, without a hearing and without a remedy; for this construction of the law makes no difference between judgments obtained on a trial of the merits and judgments by default, between cases where the party has been fully

JEFFERSON.
April, 1817.

Hazzard
v.
Nottingham.

heard, and when he has had but constructive notice of the suit; leaving him, in truth, in total ignorance of the proceeding against him.

It seems to us, therefore, that, by the constitution and law, we are bound to give full faith and credit to the record on which this action is brought, receiving it as incontrovertible evidence of the truth of the matters stated in it; and that how far the defendant is concluded by the record, depends upon what these matters are. I will not anticipate the defence which may be set up on the trial of this cause, but observe, that although there has been some contrariety of opinion on the subject, yet the better reason seems to be with those who hold that whenever parties have litigated a matter before a competent tribunal, and such tribunal has adjudicated between them, such decision is conclusive upon them in all civilized states, see 8th Johns. Rep. 177—1st Johns. Ch. Rep. 91—1st Sch. and Lef. 201—and the case of Wright vs. Tower, before cited—unless the defendant can shew that it was irregularly or unfairly obtained.

The declaration, in this case, is in the usual and proper form, of an action of debt on a foreign judgment—the demurrer is, therefore, overruled.

We have next to consider the demurrer to the second plea in bar. The " act for the limitation of actions," limits the action of debt for rent to six years, and the action of debt founded upon a specialty, under hand and seal, to fifteen years. There is no limitation whatever to the action of debt on judgment; the plea is, therefore, insufficient, and the demurrer to it must be sustained.